**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                                                    Case No. **21-31539 KAC**

Local Motion MN, LLC,

       Debtor.

**1st Modified PLAN OF REORGANIZATION UNDER**
**SUBCHAPTER V OF CHAPTER 11**

## ARTICLE 1: SUMMARY

A.  Summary of Plan

This 1st modified chapter 11 plan of reorganization dated February 17, 2022 (the "Plan") proposes to pay creditors of Local Motion MN, LLC ("Debtor") with all of the projected disposable income of the Debtor for a sixty (60) month period. The Plan has a total of two (2) secured classes, one (1) unsecured class, and one (1) class for equity interests. As required by the Bankruptcy Code, this Plan provides for full payment of Administrative and Priority Claims.

Each creditor should thoroughly read this Plan for an explanation of the precise treatment of the applicable claims. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan.  The Plan is in the best interests of creditors because the Debtor's continued operations will generate cash flow for distribution to creditors.  The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is a chapter 7 liquidation.  The liquidation analysis, as of November 30, 2021, attached as Exhibit A, demonstrates that unsecured creditors will receive nothing under a liquidation (chapter 7).

The Debtor's cashflow projections are attached as Exhibit B, and these projections confirm that the Debtor generates sufficient cash flow to fund the payments due under the Plan, and provide payments to unsecured creditors in the total amount of $267,629.00 over the next 60 months. For historical revenue, expenses, and net income, the Debtor sets forth the 2018, 2019, and 2020 financial numbers on Exhibit C.

B.  History of the Debtor

The Debtor is a Delaware limited liability company that since its inception, has differentiated itself from the competition and impacted the moving industry with its creative marketing strategies, high employment standards, a policy to promote from within, and customer-centric business model.

The Debtor was formed in 2015 by one of the current stakeholders, David Seeley.   Prior to the forming of the debtor in 2015, the company existed as another entity formed in 1998, but the focus of the company from the beginning was local and intra-Minnesota household goods moving and storage, and the company did quite well until 2008.

The housing market crisis of 2008 created severe stresses on the company, as there was a substantial fall off in revenues, which occurred at a time when the company had increased its fixed operating costs and to continue operations the company was forced borrow money from both outside and inside sources, which created a cycle of high debt service cost issues that the company never recovered from, and which necessitated the diversion of cash from investments in growth and new business to debt service and fixed monthly costs.

In 2020 new ownership was added which created new management positions, with a goal to cut costs, increase revenues and diversify revenue channels.  While these efforts were in large part successful, the pandemic hit which affected the rate of growth that had been targeted. Additionally, several of the company's creditors had initiated legal actions to recover its debts. These actions necessitated the Debtor to seek bankruptcy protection.  The Debtor believes it is can once again be a viable company if this Plan is approved.

### ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

Class 1 consists of the secured claim of Richard H. Nicholson, as collateral agent against the assets of the debtor.  Class 1 is impaired and entitled to vote.

Class 2 consists of the partially secured claim of 8625 Monticello, LLC against the assets of the debtor.  Class 2 is impaired and entitled to vote.

Class 3 consists of all allowed general unsecured claims against the Debtor. Class 3 is impaired and entitled to vote.

Class 4 consists of all allowed equity interests of the Debtor.  Class 4 is unimpaired and not entitled to vote.

### ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND COURT FEES

3.1   Unclassified Claims. Pursuant to section 1123(a)(1), this Plan has not included Administrative Expenses or Priority Tax Claims within any Class.

3.2   Unclassified Claims – Priority Tax Claims.

Pre-Petition Priority Government Claims, including the claim of the Internal Revenue Service ("IRS") and Minnesota Department of Revenue ("MDOR").  These two claims will be paid as follows:

(a) IRS Priority Claim (estimated): $475,654.64, will be paid in full, at five percent (5.0%) interest, in forty-eight (48) installments of $9,854.76 per month with the first payment

due on the Effective Date.  This claim is estimated and when the final amount is known, the payments will be adjusted accordingly. The IRS may apply such payment in accordance with its own customary practice.

(b) MDOR Priority Claim: $28,333.99, will be paid in full, at five percent (5.0%) interest, in forty-eight (48) installments of $587.03 per month with the first payment due on the Effective Date.  The MDOR may apply such payment in accordance with its own customary practice.

If the Debtor defaults on any payment due to the IRS or MDOR, and such default continues for 45 days or more, the outstanding amount due to such entity shall become due and payable immediately, and the same may be collected through the administrative collection provisions of the Internal Revenue Code, Minnesota Revenue Regulations, as applicable.

3.3    Priority Wage Claims. The Debtor owes the following priority wage claims 11 U.S.C 507(a)(4), and such claims will be paid in full on the Effective Date: (a) Mitchel Rittenhouse - $13,650.00; and (b) Rob Stinar - $5,250.00.

3.4    Administrative Expenses: Each Holder of an allowed administrative expense claim shall be paid in full, in cash, on the later of: (a) the Effective Date (or as soon as practicable thereafter); or (b) the date on which the Bankruptcy Court enters an order allowing such Administrative Expense.  Uline (proof of claim no. 4) has an administrative claim under 11 U.S.C. section 503(b)(9) in the amount of $3,458.76.   The Debtor believes there are no other unpaid administrative expense claims.

3.5    Professional Fees. The allowed administrative priority claims of the Debtor's lawyers and the Subchapter V Trustee, Steven Nosek (the "Professional Fees"), shall be paid on the Effective Date, unless the Holder of such Claim agrees to less favorable treatment with respect to such claim, provided however that the aforementioned professionals may submit a final application for compensation and reimbursement of expenses within 30 days of entry of the confirmation order in this case and the Debtor shall promptly pay any Professional Fees that are allowed as a result of such final applications.  The Debtor estimates its lawyer's fees to be $15,000.00, and Trustee Nosek's fees to be $10,000.00.

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS

Class 1: Richard H. Nicholson, as collateral agent. The Class 1 Claim, with a balance of $265,798.68, less any adequate protection payments prior to the Effective Date, will be paid in full, in cash, starting on the Effective Date, and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 1 Claim is paid in full, as follows: (a) for a period of sixty (60) months from the Effective Date at the annual interest rate of 5.0%, with a principal and interest payment of $5,015.95 per month, on an "amortizing" basis of principal and interest, on a five year amortization schedule. However, so long as Netsirv is paying this Class 1 Claim, the Debtor does not have to make this payment. Instead, the $5,015.95 payment will be paid to the Class 2 Claim below, and an additional payment. The Debtor may assume payments are being made by Netsirv unless this Class 1 Claim's attorney notifies the Debtor otherwise.  Any payments received by Netsirv (who is also obligated on this claim) will reduce the amount the Debtor has to pay.  The holder of the Class 1 Claim shall retain its lien

secured by the assets of the Debtor.

**Class 1 is impaired and entitled to vote to accept or reject the Plan.**

Class 2: 8625 Monticello, LLC. The Class 2 Claim, with a total balance of $914,853.82, will be paid its secured claim of $164,343.69, less any adequate protection payments, in full, in cash, starting on the Effective Date, or the date on which the Class 2 Claim becomes Allowed, if not Allowed by the Effective Date, and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 2 Claim is paid in full, as follows: (a) for a period of sixty (60) months from the Effective Date at the annual interest rate of 5.0%, with a principal and interest payment of $3,101.37 per month, on an "amortizing" basis of principal and interest, on a five year amortization schedule. To fully resolve the Hennepin County pending receivership motion, the Debtor agrees to make additional payments to this Class 2 Claim pursuant to the terms set for in the Class 1 paragraph above. The holder of the Class 2 Claim shall retain its lien partially secured by the assets of the Debtor. The unsecured portion of this claim will be treated in Class 3 below.

**Class 2 is impaired and entitled to vote to accept or reject the Plan.**

Class 3: Allowed General Unsecured Claims*  "General Unsecured Claims" are not secured by property of the estate and not entitled to priority under Section 507 of the Code.  As of the date hereof, the Debtor estimates the total pool of allowed general unsecured claims to be approximately $2,130,608.  In full satisfaction of such claims, each Holder of a Class 3 claim shall receive its pro rata share of $267,629.00 over the length of this Plan, on the following payment schedule:

Payment 1:   March 30, 2022 - $11,576.50

Payment 2:   September 30, 2022 - $11,576.50

Payment 3:   March 30, 2023 - $27,597.00

Payment 4:   September 30, 2023 - $27,597.00

Payment 5:   March 30, 2024 - $30,739.00

Payment 6:   September 30, 2024 - $30,739.00

Payment 7:   March 30, 2025 - $28,115.00

Payment 8:   September 30, 2025 - $28,115.00

Payment 9:   March 30, 2026 - $24,410.00

Payment 10:   September 30, 2026 - $24,410.00

Payment 11:   March 30, 2027 - $22,754.00

The percentage payment to each Class 3 creditor is approximately 11.24%, and will increase if the Retained Actions bring in net recoveries (see section 7.3 below).

*M2 Lease Funds, LLC filed a "secured" claim on LED lighting. This creditor's collateral is no longer in possession of the Debtor as that was left behind at the former rental location. Therefore, M2 Lease Funds, LLC, will be treated in Class 3.*

**Class 3 is impaired and entitled to vote to accept or reject the Plan.**

Class 4: Equity Interests.  Equity interest holders are parties who hold an ownership interest in the Debtor.  The member of Class 4 are Local Motion Holdings, Inc. (60%), Pan Yue (20%), and Anna Chen (20%).  All members shall retain his/her/its equity interests in the Debtor on the Effective Date.

**Class 4 is unimpaired and deemed to accept the Plan.**

## ARTICLE 5: ALLOWANCE OR DISALLOWANCE OF CLAIMS.

5.1    Disputed Claims. A "Disputed Claim" shall mean a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (b) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2   Payments and Distributions with Respect to Disputed Claims: No payments of distributions will be made in respect of a disputed claim until such claim has been allowed by a final, non-appealable order.

5.3   Settlement of Disputed Claims:  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Debtor obtained approval of a $75,000.00 settlement with FSM Holding, LLC, related to a pre-petition garnishment (see docket no. 61), and that amount has been paid to the bankruptcy estate.

## ARTICLE 6: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1  Assumed Executory Contracts and Unexpired Leases.

   a.  The Debtor will assume its contract with AX TC Industrial II, LLC, its commercial landlord for the real estate commonly known as 2500 Walnut Street Ste. 200, Roseville, MN 55113.  The cure amount due to the landlord under this Plan is $15,527.71.  This contract expires on July 31, 2028.

   b.  The Debtor will assume its contract with Sumitomo Mitsui Finance and Leasing Co., Ltd. for its vehicles. The cure amount due to Sumitomo Mitsui Finance and Leasing Co., Ltd. under this Plan is $0.  This contract expires on February 18, 2024.

   c.  The Debtor will assume its lease with Wells Fargo Bank, N.A. for its forklift. The cure amount due to Wells Fargo Bank, N.A. under this Plan is $2419.86. This contract expires on July 21, 2022.  There is a $1.00 buy out at the end of this lease agreement.

    d.   The Debtor will assume its contract with Ryder Truck Rental, Inc. for its vehicles. The cure amount due to the Ryder Truck Rental, Inc. under this Plan is $0. This contract expires on June 5, 2025.

    e.   The Debtor does not believe there are any other executory contracts and/or unexpired leases.

6.2  <u>Rejection of Executory Contracts and Unexpired Leases</u>. Each executory contract or unexpired lease that (i) has not been expressly assumed or rejected with approval by order of the Bankruptcy Court on or prior to the Confirmation Date, and (ii) is not the subject of a motion to reject pending as of the Confirmation Date will, as of the Confirmation Date, and subject to this section, be deemed to have been rejected by the Debtor. A Proof of Claim for any claim arising from the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court no later than 30 days after entry of the order confirming this Plan.

## <u>ARTICLE 7: MEANS OF IMPLEMENTATION</u>

7.1  <u>Vesting and Future Income.</u> On the Effective Date, all of the Debtor's respective rights, title, and interest in and to all assets shall vest in the reorganized Debtor, and in accordance with section 1141 of the Bankruptcy Code.

7.2  <u>Future Management</u>. The Debtor will continue to be managed by Mitchel Rittenhouse. Mr. Rittenhouse will receive a fixed salary of approximately $7074.98 (gross) per month.

7.3  <u>Preservation and Settlement of Causes of Action</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the reorganized Debtor shall retain all causes of action, including without limitation causes of action that may exist under sections 542, 544 through 550 and 558 of the Bankruptcy Code or under similar state laws (collectively, the "Retained Actions"). The Debtor plans to bring adversary actions against the following, and any net recovery will supplement the payments to Class 3 above:

    (a)  Anna Chen

    (b)  Gary Smith and Jeannie Seeley-Smith

    (c)  Na Chen

    (d)  Pan Yue

In order to resolve pursing Mitchel Rittenhouse for preferential payments in the year prior to the Petition Date, the Debtor and Mr. Rittenhouse have agreed that Mr. Rittenhouse will waive his unsecured claim of $249,985.00 against the bankruptcy estate. Given the amounts involved, the Debtor believes this is a fair resolution. Finally, the Debtor has determined that any actions against Providence Group for payments in the year prior to the Petition Date would not be fruitful due to the ordinary course and reasonably equivalent value defenses Providence Group would raise as it is a moving contractor that provided and provides services to the Debtor.

7.4  <u>Confirmation Pursuant to Section 1191(a) or 1191(b) of the Bankruptcy Code</u>. The Debtor's petition for relief elected to have subchapter V of Chapter 11 to apply to its case.

The Debtor intends to seek confirmation of this Plan under Section 1191 of the Bankruptcy Code. If all voting classes accept the Plan, the Debtor will seek confirmation pursuant to Section 1191(a).  If one or more voting classes do not accept the Plan, the Debtor will seek a "cram down" confirmation of the Plan pursuant to Section 1191(b).

7.5    Distribution of Plan Payments.  If the Plan is confirmed pursuant to 11 U.S.C. 1191(a) or 1191(b), the Debtor will make all payments under this Plan notwithstanding the provisions of the Bankruptcy Code.

7.6    Default.  For the avoidance of doubt, nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy code.

(a) Notice of Default: If the Debtor fails to timely make a payment due to any class of this Plan, or if the Debtor fails to timely pay his Professional Fees, the relevant creditor may send a written notice of default to the Debtor. Notices of default must be in writing and delivered by first class mail to: Local Motion MN, LLC, 2500 Walnut Street Ste. 200, Roseville, MN 55113.

(b) Remedy: Unless the Plan expressly provides otherwise, if the Debtor fails to cure within seven (7) business days of such notice from a creditor, the relevant creditor shall be entitled to file an affidavit of default and obtain stay relief with respect to any collateral subject to its liens. All unsecured creditors shall be entitled to treat this Plan as a contract and a default hereunder as a breach of contract by the Debtor.

## ARTICLE 8: GENERAL PROVISIONS

8.1    Definitions. The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply unless a term is otherwise defined in this Plan, and as supplemented by the following definitions:

- "Effective Date:" The effective date of this Plan is the first business day following the date that is 30 days after the confirmation order has become a final order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.2    Severability. If any term of this Plan is held by the Bankruptcy Court to be invalid or unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.3    Binding Effect of this Plan. The provisions of this Plan will be binding upon and inure to the benefit of the Debtor, any holder of a claim or equity interest, their respective predecessors, successors, assigns, agents, officers and directors and any other entity affected by this Plan.

8.4    Captions. Article and Section captions used in this Plan are for convenience only and will not affect the construction of this Plan.

8.5    Controlling Effect. Unless a bankruptcy statute or procedure is specified as controlling by federal law, the laws of the State of Minnesota shall govern this Plan and any agreements

executed in connection with this Plan.

8.6    Court to Retain Jurisdiction. After the Effective Date, this Court shall retain and have exclusive jurisdiction of all matters arising out of, and related to the Debtor's bankruptcy case or this Plan pursuant to, and for purposes of, subsection 105(a) and section 1142 of the Bankruptcy Code among other things, to: determine any and all disputes relating to administrative expenses, claims and equity interests, including the allowance and amount thereof; enforce or interpret the provisions of the Plan or the order confirming the Plan; determine any and all disputes; consider and allow any and all applications for compensation for professional fees; determine any and all applications, motions, adversary proceedings and contested or litigated matters pending on the Effective Date and arising in or related to the Plan; remedy any defect or omission or reconcile any inconsistency in this Plan; issue such orders, consistent with section 1142 of the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete implementation of this Plan; hear any other matter not inconsistent with the Bankruptcy Code; and enter a final decree closing the Debtor's bankruptcy case.

8.7    Reporting Obligations. The Debtor will continue to file periodic disbursement reports when due until the case is closed, dismissed, or converted.

## ARTICLE 9: DISCHARGE, INJUNCTIONS, AND SETTLEMENTS OF CLAIMS

9.1   Discharge. The Court shall grant the Debtor a discharge pursuant to 11 U.S.C. section 1192 of all debts that arose prior to the Petition Date in this case, except any debt (1) on which the last payment is due after the first five (5) years of the Plan; and (2) debts of the kind specified in Section 523(a) of the Bankruptcy Code.

Respectfully Submitted,

Dated: February 17, 2022

/e/ John D. Lamey III
John D. Lamey III, Esq., Atty ID:0312009
980 Inwood Ave N
Oakdale, MN 55128
651-209-3550
Fax 651-789-2179
**Attorney for the Debtor**

Dated: February 17, 2022

Mitchel Rittenhouse, CFO

8

# EXHIBIT A

**United States Bankruptcy Court**
**District of Minnesota**

In re  **LOCAL MOTION MN, LLC**

Debtor(s)

Case No.  **21-31539 KAC**
Chapter  **11**

### LIQUIDATION SUMMARY - AS OF NOVEMBER 30, 2021

| Description | Total Amount | Real Property | Personal Property |
|---|---|---|---|
| **Total Property Values (as of 11-30-21)** | **623,226** | **0.00** | **623,226** |
| *Petty Cash - $100* | | | |
| *Bank Balance - $52,783* | | | |
| *Accounts Receivable - $150,172* | | | |
| *Storage Pods - $160,000* | | | |
| *Office Furniture, Fixtures and Electronics $20,000* | | | |
| *LED Lighting - $15,000* | | | |
| *Preference Settlement - $75,000* | | | |
| **Schedule D. Secured Claims** | **509,537** | **0.00** | **509,537** |
| **Schedule C. Exemptions** | **0.00** | **0.00** | **0.00** |
| **Interest in Nonexempt Property** | **0.00** | **0.00** | **0.00** |
| Less: | | | |
| Estimated Chapter 7 Admin Expenses | **50,000** | | |
| Schedule E. Priority Claims | **522,889** | | |
| **Available to General Unsecured** | **ZERO** | | |
| Total General Unsecured | **2,130,608** | | |
| Percent Distribution | **0% - ZERO** | | |

# EXHIBIT B

**Local Motion MN, LLC**
**Case No.: 21-31539 KAC**
**Plan Projections**

| | YEAR 2022 (March - Dec.) | YEAR 2023 | YEAR 2024 | YEAR 2025 | YEAR 2026 | YEAR 2027 (Jan. & Feb.) |
|---|---|---|---|---|---|---|
| **Gross Revenue*** | 3,628,965 | 4,364,528 | 4,391,261 | 4,395,699 | 4,425,698 | 672,561 |
| **Expenses:** | | | | | | |
| NET CC Fees | 81,824 | 97,745 | 98,397 | 99,572 | 99,963 | 13,154 |
| Insurance | 74,770 | 89,724 | 89,724 | 89,724 | 89,724 | 14,954 |
| Health Care | 55,000 | 66,000 | 66,000 | 66,000 | 66,000 | 11,000 |
| Delta Dental | 5,450 | 6,540 | 6,540 | 6,540 | 6,540 | 1,090 |
| Rent | 149,380 | 179,256 | 179,256 | 179,256 | 179,256 | 29,876 |
| Snow Removal and Plowing | 500 | 500 | 500 | 500 | 500 | 0 |
| T&E | 15,000 | 18,000 | 18,000 | 18,000 | 18,000 | 3,000 |
| Vehicle Repairs and Maintenance | 12,500 | 22,000 | 22,000 | 24,000 | 25,000 | 2,000 |
| Packing Materials | 19,515 | 23,313 | 23,468 | 23,748 | 23,842 | 3,530 |
| Uniforms | 8,500 | 9,500 | 9,500 | 9,500 | 9,500 | 1,000 |
| Claims and SI's | 7,500 | 9,000 | 9,000 | 9,000 | 9,000 | 1,500 |
| Ascentium - Trailer Lease | 7,440 | 8,928 | 8,928 | 8,928 | 8,928 | 1,488 |
| Sumitomo | 71,476 | 85,771 | 85,771 | 85,771 | 85,771 | 14,295 |
| Ryder | 175,492 | 210,590 | 210,590 | 210,590 | 210,590 | 35,098 |
| Enterprise Truck Leases 6 | 84,000 | 100,800 | 100,800 | 100,800 | 100,800 | 16,800 |
| Fork Lift Lease | 6,680 | 8,016 | 8,016 | 8,016 | 8,016 | 1,336 |
| Summer Fleet Leases | 30,000 | 30,000 | 35,500 | 35,500 | 44,000 | 0 |
| IT Equipment/Equipment Lease (Metro) | 4,500 | 5,400 | 5,400 | 5,400 | 5,400 | 900 |
| Centerpoint - Utilities | 5,000 | 6,000 | 6,000 | 6,000 | 6,000 | 1,000 |
| Xcel Energy - Utilities | 6,500 | 7,800 | 7,800 | 7,800 | 7,800 | 1,300 |
| Verizon Wireless - Communications | 10,000 | 12,000 | 12,000 | 12,000 | 12,000 | 2,000 |
| Comcast - Communications | 2,500 | 3,000 | 3,000 | 3,000 | 3,000 | 500 |
| Ring Central - Communications | 6,000 | 7,200 | 7,200 | 7,200 | 7,200 | 1,200 |
| Microsoft - Software | 2,680 | 3,216 | 3,216 | 3,216 | 3,216 | 536 |
| Software | 15,000 | 18,000 | 18,000 | 18,000 | 18,000 | 3,000 |
| Waste Management | 8,510 | 10,212 | 10,212 | 10,212 | 10,212 | 1,702 |
| SEO/SEM | 75,000 | 90,000 | 90,000 | 90,000 | 90,000 | 15,000 |
| Google PPC | 10,000 | 12,000 | 12,000 | 12,000 | 12,000 | 2,000 |
| Membership/Subscriptions | 7,500 | 9,000 | 9,000 | 9,000 | 9,000 | 1,500 |
| Marketing Materials | 15,000 | 18,000 | 18,000 | 18,000 | 18,000 | 3,000 |
| Client Relations and Networking | 5,000 | 6,000 | 6,000 | 6,000 | 6,000 | 1,000 |
| Leads | 24,500 | 28,750 | 28,750 | 28,750 | 28,750 | 4,250 |
| Real Producer - Advertising | 7,500 | 9,000 | 9,000 | 9,000 | 9,000 | 1,500 |
| Bill Apple - Sales Contractor Commissions | 102,867 | 122,883 | 123,703 | 124,569 | 125,672 | 18,605 |
| Michael Lupton - Sales Contractor Commissions | 102,867 | 122,883 | 123,703 | 124,569 | 125,672 | 18,605 |
| Monthy Office Salaries | 491,480 | 589,776 | 589,776 | 589,776 | 649,776 | 98,296 |
| IRS Taxes | 98,290 | 117,948 | 117,948 | 117,948 | 129,955 | 19,658 |
| Minnesota Dept of Rev | 22,000 | 26,400 | 26,400 | 26,400 | 29,240 | 4,400 |
| SubV Trustee Fees | 10,000 | 0 | 0 | 0 | 0 | 0 |
| Debtor's Attorney | 15,000 | 0 | 0 | 0 | 0 | 0 |
| Contract Labor | 1,567,500 | 1,872,500 | 1,885,000 | 1,889,500 | 1,902,522 | 283,500 |
| Chapter 11 Payment - IRS | 98,548 | 118,257 | 118,257 | 118,257 | 59,129 | 0 |
| Chapter 11 Payment - Minnesota Revenue | 5,870 | 7,044 | 7,044 | 7,044 | 3,522 | 0 |
| Class 1 - Richard H. Nicholson, collateral agent ** | 50,160 | 60,191 | 60,191 | 60,191 | 60,191 | 10,032 |
| Class 2 - 8625 Monticello, LLC ** | 31,014 | 60,191 | 60,191 | 60,191 | 60,191 | 6,203 |
| Class 3 - Unsecured Creditors | 23,153 | 55,194 | 61,478 | 56,230 | 48,820 | 22,754 |
| | | | | | | |
| **Total Expenses** | 3,628,965 | 4,364,528 | 4,391,261 | 4,395,699 | 4,425,698 | 672,561 |
| | | | | | | |
| **NET PROFIT** | 0 | 0 | 0 | 0 | 0 | 0 |

***Move, Storage, Retained Fees, Valuation Sales, Packing, Licensing**

**See Plan for payment possibilities to Classes 1 and 2.

# **<u>EXHIBIT C</u>**

|  | 2018 | 2019 | 2020 |
|---|---|---|---|
| Income | 4,889,951 | 3,377,698 | 2,288,499 |
| COGS | 2,518,989 | 1,798,237 | 976,806 |
| Gross Profit | 2,370,962 | 1,579,461 | 1,311,693 |
| | | | |
| Total Expenses | 2,443,115 | 1,558,956 | 1,879,386 |
| Net Income | (72,153) | 20,505 | (567,693) |

Notes

2018  - Cost of Labor was excessive resulting in net income loss, and this was before debt service costs.  Revenues were strong but some of the business being serviced was unprofitable and was ended.

2019 - Cost of Labor remained excessive, but some fixed costs were reduced, resulting in small net income gain, but and again this was before debt service costs, and revenues dropped 31%, primarily due to reductions in marketiing spends due to cash constraints

2020 - Labor costs were brought under control, other costs saving efforts continued to drop expenses, but debt service costs continued to plague the company.  Revenues continued to drop as there was insufficient cash avaialble for lead purchases and other marketing efforts.